RICHARD OSTROH, DEPUTY CITY ATTORNEY, APPELLANT CITY OF SAN DIEGO I believe I have 20 minutes. I would like to reserve five or six, if that's possible, to in response. And I was also asked that Mr. Telfer, who was the Deputy City Attorney who argued this case in front of the District Court and who briefed it and who is now in retirement and is off fishing somewhere, asked that his name be retained on the record. And is whether or not the purpose of the California legislature in enacting Vehicle Code Section 22658 in toto and Section L of that statutory scheme in particular, whether it was public safety was what they were trying to legislate. If so, then the challenge statutory scheme falls within the broad safety exemption that the FAAA, the Federal Aviation Administration Act, that Congress clearly wished to preserve for the states and municipalities, because if it is related to safety, then it is not related to price, route or service, which was what Congress was attempting to preempt. The city argues that it clearly does. And for all the reasons that were argued in the very extensive briefs that were provided not only by my adversary and myself, but also the two amicus briefs, I think it's argued extensively. I want to highlight three of them. But before even I do that, I want to touch upon one of the issues that were raised in the – that was raised in the previous argument, and that is this whole construct of the right of private towing parties to seize essentially vehicles from private property. As Justice Clifton brought up, I think it's important to stress that without the existence of this statutory scheme, California Vehicle Code 22658, there would exist no right whatsoever for these private towing companies to seize vehicles that are parked on private property. It is only – without this statutory scheme, it would be nothing more than common law theft, and it would be a constitutional violation. That wouldn't be constitutional. They're not government actors. So the limits on a private towing company aren't the same limits that apply to a city. Okay. As for whether it's theft, there are lots of other circumstances that could affect it. So I understand where you're coming from, but I wouldn't read too much into my unhappiness with the city's conduct, because I don't think the towing company has the same obligation. No, but in this instance, the city is more or less on the other side of the issue, Your Honor. We are attempting to enforce a statutory scheme that provides some degree of protection and due process, it be a curbside due process, if you will, to the owners of vehicles and such that they are not put in a situation where they may willy-nilly have their vehicles seized, often in the dead of night, sometimes in the middle of the day, but without their presence and without the specific authorization of the property owner saying, this particular vehicle I want to be towed, instead of some blanket contract in which you say you may come on and seize any vehicles at any time that you, the towing company, find to be somehow in violation of the parking scheme that we have here. And it's not only illegally parked vehicles. Okay. Suppose the landlord shows up and says, here's my authorization. I'll sign the form. I'll stand here. You tow it away. That, I take it, is okay under the scheme that you advocate. From my perspective, from the other case, it's exactly the same, because there's not a question in this case as to whether the landlord objects to the towing, whether the landlord wants to permit the tow. And we've got an amicus brief that property managers like the idea because they don't want to get up at 2 a.m. to have to walk out to the parking lot to tow away the unauthorized cars. But there's a, hopefully, it's envisioned by the statute that there be some kind of security officer there, someone uniformed, who might have a specific knowledge of whether or not this particular vehicle is illegally parked. We're not only talking about ones that are blocking fire lanes or that are parked out in the middle. There's all kinds of circumstances in which a car may be parked in a proper space without a proper permit that is there with the permission of the owner of that space, as you pointed out, who gave that particular person permission to park there, whether they be an overnight guest, whether they be a family member who may be parking there, that the person who normally would park in that space moved his or her car to accommodate the person, be it, you know, chivalry or, you know, because the person was elderly, whatever reason. It could be that the person's, it's the person's own space. And his car, for instance, is being kept overnight. Let me shift you back to the focus of this. I think the issues raised in the other case are really materially different from the issues here. And what you need to do here is attach the code section at issue here with the safety. Okay. And rather than take more of your time on the constitutional take-back elements, let me ask you to focus more on, under the standard which I derive from the Argrage case, as to whether the statute is genuinely responsive to safety concerns. Three specific things I want to call the Court's attention to, in addition to all the issues that were briefed. The first is that after this trial, on August 9, 2003, with an eye specifically on this issue, and on this Court's earlier ruling in the Toker case, and in the California Court of Appeals ruling in Cervantes, and on Judge Brewster's ruling in this case, and on Judge White's ruling in Toe Service v. City of San Jose, which is attached to our reply brief, with an eye on all of these rulings that were on or about this issue, the legislature passed Assembly Bill 792. They added two sections to the Code's section, sections M1 and M2, in which their specific intent was to clarify that this was intended to be a safety issue. The language that the legislature, that was used in the history of the bill, it says in its description, this bill would provide that it is the intent of the legislature that certain statutory provisions relating to the towing of vehicles further and promote the safety and welfare of the public. They go on in the specific justification for M2, which is the section that relates to L1, which is the section of the Code structure that was at issue in this case. They said, in the adoption of subdivision L, to further the safety of the general public by ensuring a property owner has provided authorization for the removal of a vehicle from the property, thereby promoting the safety of those persons involved in the removal of the vehicle. In addition, blah, blah, blah, this will assist the courts in any subsequent litigation in this question, and it is intended to enhance the position and legal standing of the State of California. This was an effort to clarify what the legislative intent was. And let's not forget that it was the question of legislative intent and not statutory interpretation that was at issue in front of Judge Brewster in the district court. Judge Brewster, just intent, the phrase used by the Supreme Court was genuinely responsive to safety concerns. And I infer from that it's not simply a matter of the legislature applying some window dressing and saying, we've got safety concerns here. It genuinely suggests that there's got to be a bona fide connection between what they're doing and, in this case, the safety concerns. Yes. And there was at the beginning. It is, I think, inherent in all of the provisions that are provided for. It was argued certainly in the evidence that was put in front of Judge Brewster at the trial. But the argument is that if this had been present at the time, then the entire investigation as to what, how it was intended would not have had to have occurred at that time. It was — it's not like they're putting a window dressing on something calling it public safety when it clearly has no relationship to it. The legislature has the right to say we intended this to be our purpose when we first enacted the statute. There has clearly been misunderstanding about it because we see that the Ninth Circuit has come down one way. Our own court of appeals has come down another. There's been two district court cases that seem to look to us for clarification. We are seeking to add clarification to it. And therefore, it — by putting this on — this on what was already clearly an integral part of the entire structure, the legislature is not doing what the Supreme Court said one could do, which is put simple window dressing on it. They are trying to instruct the courts that lest there be any misinterpretation about what we're trying to accomplish here, this is what we're trying to accomplish. And as I — and to call your attention back to what we argued before, without this entire structure, which the appellee chose to ignore and decided that they could honor a contract that tried to circumvent this section, that without this section there would be no right to tow these — these vehicles at all. And therefore, by insisting that we have these notice provisions, that we have someone present to provide some kind of arbitration of disputes between the person whose car is being towed and the person seeking to tow it, that we are attempting to provide for the general welfare and protect the safety of everybody involved, those who are towing, those who, you know, have to defend it later at the impound yard, the security guards, you know, there's all kinds — I mean, the mind — I think — focus a little more sharply. I mean, I'm not sure in the state of nature what you say is true, that you need affirmative authorization from the legislature to tow, because the — in this case, the vehicle is being towed from private property, presumably without authorization to be there. But again, I think that gets us off on the wrong track. We need to make the connection here between what the code does and safety. And Judge Brewster, at least, said that you couldn't find that connection, that the extrinsic evidence didn't support the proposition there was a direct safety benefit. Now, I think that's — that's something you need to focus on. Where is the safety coming out of this? The safety is coming out of it for several things. One, that it — by having specific authorization, and as the statute suggests, hopefully having someone in a security position there at the time that the tow was being made, there is — it decreases the chance that the vehicle owner goes one-on-one with the tow truck operator and fights to keep his vehicle there instead of in the tow yard. That's number one. The code doesn't require a security officer. I mean, it could be the landlord or the property manager or some — what, more feeble person that steps up and has to be there. But at 2 a.m., who is it likely to be, is the argument. Secondly, there might be a specific — it addresses safety because there's a specific intervention of somebody who can — who knows this particular tenant or renter and this particular vehicle and who's there to say, look, just be — I know it doesn't have a sticker. This is why it doesn't have a sticker. And there's a calm. There's a curb. There's some kind of due process that is put in between there that we always hope tends to defuse the passions that go — that are present when due process is lacking. The point was specific — So there's also a cost to requiring an extraordinary procedure every time a car is going to be towed from an ostensibly improper place on private property, right? Yes. Do you inquire that the tow truck company's got to go talk to the owner before they tow it? In every case, that's going to raise the cost of getting these things towed when they have to be towed. Yes, but it's also going to prevent the unnecessary, illegal and improper towing of cars that should not be towed. And is it a cost that is proper for the state to impose when general public safety is one of the things that they're trying to legislate? And that's what the legislature — The question here is whether there is an adequate safety connection. There were several other nexuses that — or nexi — that were argued. One was that one of the parts of the statute requires prior notification to the police. This is in an effort to avoid the police dedication of resources to determining that a car that was towed was not in fact stolen. Thus, if you notify the police an hour before, as was required, we're going to tow this car, then they have it — they have the license plate written down so that when the person comes down the next morning and finds, lo and behold, their car, which they thought was properly parked, is missing, their first assumption is that it's going to be — that it was stolen, not that it was towed. But how is that a safety issue? Because the police are then not devoting resources to tracking a stolen vehicle report. When they can say, no, we have a record of that, it was towed. You can — Well, that sounds like a resource argument as opposed to a safety argument. But police resources are public safety. It was made clear in front of Judge Brewster that when the officers testified, that they often had to go and diffuse situations because of the non-adherence to this law. And with limited police resources, these were two officers that had to go dedicated to this and resolving a situation at the impound yard or even at the site, but more usually at the impound yard. These were policemen that were taken out of service and that they couldn't respond to other public safety things. And the reason that this case came up was because the San Diego police did a problem-oriented police, a POP project, that identified this as a problem, that they were going too often to impound yards to intervene, you know, and diffuse violent situations between people who were going there to claim their cars and the impound yard. And that they were improperly towed, that they were towed without notice, and that the police were having to devote resources to this problem, that they couldn't — The safety interest that the car owner goes out to the impound yard and comes to blows with whoever's there — Yes. — or is the safety interest that police are involved to some degree and therefore they're not on the corner stopping, you know, a bank robber? Both. Seriously? The second one — would the second one count as a genuine safety interest within the meaning of what the Supreme Court's talking about? I think that — And that you've used up resources because someone is doing something that's non-safety — assuming it was not safety-related, but therefore they can't be somewhere else protecting somebody's safety on an unrelated event? That seems to me too far afield. But maybe I'm missing something there in terms of what the Supreme Court said. No, Your Honor. In terms of — the Supreme Court wanted to see a real nexus and not something that was called safety but was really price, route, or service. I think it's — it was the police felt that in a — in a local district where you had three police cars, six officers available to you, to take a third of them away at any point was prevent — was crimping their ability to do other things that they wished to be doing with their resources rather than — than this. But even if it — the argument — the problem is that even if what you say is true, and I — and I disagree with it — I'm not saying anything. I'm giving you a question. Even if — even if the answer to that question is the opposite, how is that a regulation of price, route, or service, which is the thing that the preempt — that Congress was attempting to preempt the states from doing? You may argue that it's — that it's — it may not be safety or it may not be consumer protection, which I think is — is a part of public safety, but they're certainly not attempting to — to — to legislate price — I'm not really making an argument, as I said. I'm asking you to argue and to answer a question. It's — But then, as I understand your question, how — how is it related to price or service? Maybe that's a question for the Supreme Court, because I thought that they're the framework, that there's preemption absent a genuine safety interest. But they said that the traditional and strong deference that — that the federal government shows to local governments and state governments when it comes to policing their — their neighborhoods, to deciding where they wanted to vote their resources, is something that they were specifically not attempting to — to legislate. Counsel, you — you had only about one minute left. There's two cases — since this decision — If you want to reserve any time, you've got to do it now. Okay. I won't. I'll — I'll use it. Since the trial, both the Eighth and the Eleventh Circuits have — have come down on the opposite side of the side that Judge — that Judge Brewster came down on, and these are — all these cases that we talk about were — were in the brief. But again, the Eighth Circuit, citing the City of Columbus, found in the operators of Kansas City, Missouri, that there was a safety factor to the — the local ordinance. More importantly, the Eleventh Circuit in the galactic towing versus the City of Miami Beach found a — a statute that was worded almost the same as — as the vehicle code section that prohibited non-consensual towing that wasn't specifically authorized. They found this to be a safety feature.   Excellent. Okay. Were the 28a тяж sites in the 28j letter? I thought you said they were in the brief. They're in the brief, Your Honor. Okay. They're — they're all in the brief — the in-reply brief. They're — they're all discussed. Finally, the question comes down to who is better suited to determine not only the — the legislative intent, but the — the meaning of California law. Is it a California court of appeals in a published decision, as it did in Cervantes, or is it a Federal District Court sitting in California? I don't think this is a question of the interpretation of the California statute. I'll — I'll say specifically, I think this is a question of Federal law as set forth in the Supreme Court's Ar-Garage decision, and so, although I understand the argument that says we look to California courts to interpret California law, I think we look to the Federal courts to decide whether or not it satisfies the Federal law standards. Agreed, Your Honor. But the Federal court in — in the legislation and the Supreme Court in Ar-Garage said specifically that they're not going to put a narrow prism on looking at the local — on the local safety ordinances. And here we have a California court saying we find this to be within — within the safety ordinance exemption, and we have the California legislature itself reiterating that it is trying to — to put it clearly within that, and it's not that far a reach for them to do that. It's clearly a safety consumer protection argument that they're trying to keep it there. So we respectfully ask that — that — that Judge Booster's findings be reversed, and that it be sent back and remanded with the instruction that the — that the permanent injunction be dissolved. Thank you. Thank you very much, Your Honor. May it please the Court, my name is Michael McGovern. I'm here this morning on behalf of the Appellee, John Tillerson. I'm joined this morning at council table by Douglas Ben-Adon, counsel for the Amicus North County Apartment Owners Association, and also Elizabeth Trefonis, a third-year law student at CalWestern, who's done a lot of work on this particular issue in this case, in fact, has a comment coming out in the next law review dealing with — with this statute and this particular issue. To begin with, I have to take exception to my esteemed opponent's representation that tow operators are, to quote, willy-nilly towing cars from apartment complexes. That's not the facts of this case. That's not the facts of this situation at all. The towing companies that are — a towing company, particularly this towing company and the scheme of towing in general, is subject to clear authorization and guidelines from property owners. They have directives specifically telling the towing companies when a vehicle is unauthorized, how it could be parked unlawfully and in need of towing. This is not, as is sometimes represented, a case where towing companies are towing without authorization. They have authorization. They have specific guidelines telling when to tow and not to tow. The distinction here is not no authorization versus authorization. No authorization, there's already a law for that. It's called criminal theft. It's not that they don't have authorization. The distinction in this case is that they have prior written authorization instead of on-site written authorization. And the prior written authorization gives them specific guidelines. It tells them when a car needs to be towed. They don't have a lot of discretion when they're operating pursuant to these guidelines and this written authorization. It's the difference, if you will, between my wife calling me at my office and saying, bring home a bottle of 2% milk and whole wheat bread and pick it up at the store on your way home. I think I can follow those directions. I think I can do that. As opposed to her having to come down to my office with a written note and hand it to me in person that says, pick up milk and bread at the store on the way home. I have authorization. I have some guidelines to go by. It's just that she doesn't hand them to me. In a simple term, that's what's going on here. The tow operators have specific written authorization. They know exactly what they're supposed to be doing in these cases and they're doing it. I think I understand at least that small part of this case, but what about the safety issue that seems to be at the core of whether this is preempted or not? The safety issues that have been brought up by the city I think are largely red herrings. Here's the safety issues, if you will, that the city says are – here's the issues that the city says raise safety concerns. They say, well, having a written authorization by somebody that's at the scene of the tow, number one, prevents towing, prevents involuntary towing. Well, first of all, it doesn't. It just delays it. It makes it more complicated. The tow is still going to be made. It doesn't prevent towing. It just complicates it. It delays it. It makes it more expensive. It makes it more cumbersome. But it's not going to prevent involuntary towing. The only thing that's going to prevent involuntary towing is people not parking where they're not supposed to park. That's what prevents involuntary towing. It's rampant in San Diego County where people are parking where they're not supposed to park. There are signs. The council talks about due process. The due process in this case, of course, I use that term loosely because obviously this is not a 1983 case, but there are signs in every instance, in every apartment complex, large signs that are set forth by statute as to the content, to the size, to the location that say don't park here. People willingly and knowingly avoid and ignore those signs constantly. These folks wouldn't even be in business if people would obey these signs, if they would obey the due process that's given to them. But they don't. It's rampant. The only way to prevent involuntary towing, it's not by making somebody come down in the middle of the night and signing a piece of paper. It's by people parking where they're supposed to park. That's the one thing they say. That's one of their safety arguments. The other argument they made, and I don't quite understand it, is it expedites the recovery of vehicles after they've been towed. That's nonsensical. It's over at that point. The written authorization doesn't have anything to do with that. They say it prevents mistakes. The assumption there is that the property owner is not going to make a mistake. They make mistakes all the time. The assumption is that the tow operator might make a mistake, but that the property owner will not make a mistake. There's no basis for that assumption in the first place. And also, even if a mistake… It seems to be that under the prior authorization or blanket authorization, you may have guidelines, and then the property manager knows that, oh, yeah, there's somebody who's been told they can park over there, doesn't bother to tell the towing company we're using this space over there now. The towing company doesn't know any better, so they're not making a mistake. It's the property manager's mistake, but because he's not contacted, nobody on the scene knows it. And that's what I understood to be the rationale behind that argument. Well, even if that's – let's assume such a mistake is made, where's the safety? And I apologize for posing the question, but it still doesn't raise a safety concern. If a mistake is made, it's a mistake. It's easily remedied. You call the towing company, they bring the car back. There's no – there's no dangerous – even if there's a mistake made, no dangerous or no safety concern is raised by a mistake. Well, again, I understand the argument to be the risk of confrontation, when the person who's been told you're supposed to be able to park over there, hears the tow truck and looks out and says, now, wait a minute, and goes rushing out, and then you've got somebody trying to stand in front of the tow truck, and the tow truck guy is trying to do his job and haul the car away, and police get called. And that's really the core of this case. That's the core. It's confrontation. That's the core. The core of this case and what it all boils down to is the city says you're – The background noise is loud in this case. Everybody understands the confrontation between the property owners, and especially the property managers who don't want to have to get up at 2 a.m. to deal with it, and the people that are parking in different places. But what we're focused on here is this instruction from the Supreme Court that unless it's genuinely responsive to safety concerns, it's preempted. So if it is, it's okay. So that's what we need to really focus on both sides. And I agree. As I said, the rest of it's all red herrings. The only possible safety concern is a safety concern of a confrontation between a vehicle owner and a tow truck company. But why isn't that a very real concern? Well, because the proof didn't show it. Absolutely no proof that there was any physical – I mean, the problem with them is they failed to prove that at trial. That's – there was no proof. And Judge Brewster says the city did not prove at trial when they had the chance all day at the trial. Did you prove to the contrary? I'm sorry? Did you prove to the contrary? I mean, there's an issue – the assumption in your statement is that cities got to justify its statute, or justify the state statute. Well, I have to take the state statute at face value, and you have to prove the contrary. Well, there was no – there was no evidence in the case of any violence. There was no evidence of any – there was some – I mean, confrontation, when we talk about confrontation, it's usually verbal. It's a verbal confrontation. People say, hey, that's my car. It's whatever. There was no evidence of any fisticuffs. There's no evidence of any violence at all. It was verbal. I'm sorry? Was the statute enacted? The statute was enacted? I don't know. I don't recall exactly when it was. It was in the 80s sometime, I believe. You have a statute that's supposed to eliminate the possibility of confrontation. I don't quite understand the argument that they have to show that there are confrontations. Well, I don't know that that – of course, that whole idea just came up within the last year, that that's – that that was the purpose of the statute. I'm just speaking for myself, but it makes a lot of sense to me, having witnessed a couple of confrontations. Well, perhaps the most telling evidence in the case was the fact that the city had some statistics about calls that they had received of altercations or calls relating to a tow. And, again, none of them represented any violence. None of them represented any safety concerns. They were people who don't want their car towed. They call the police. They don't know what else to do. They just don't want their cars towed. No evidence of any violence. Now, the judge entered a temporary restraining order in this case in joining the city from enforcing this on-site authorization law. Tellingly, after the entry of that temporary restraining order, the calls for police service actually decreased. The calls for police assistance at the scene of a tow decreased. Judge Brewster, rightfully so, found that, in fact, the facts of the case showed that requiring a third party on the scene actually escalated confrontation. And, again, I use the word confrontation. That's not to suggest that a confrontation necessarily infers a safety problem. I could say I'm having a confrontation with my opposing counsel today, but I don't feel I'm in any danger. We're having a confrontation, but that doesn't impose a safety concern. There's no safety concern here. And it's the same with towing. The fact that there's a confrontation does not mean that there's any safety concern. There's no genuine safety concern. That's what the Supreme Court said. And after a full bench trial, that's what Judge Brewster found. Was there any evidence? I mean, it's always hard. Sometimes people say it's hard to prove a negative, so there might be a difficulty to prove that there could never be a confrontation. So, putting aside who's got the burden of putting this evidence in the record, is there any evidence in the record from the trial that car owners were getting in fights with tow truck people? Fights? I don't recall. But even if there was, let's assume for purposes of let's say that there was evidence of a fight. The point is, and a real point is, does the requirement of having somebody there to sign a tow ticket prevent that? Some of the most telling testimony was from Mr. Tillerson. He said, I don't care if you have ten people on scene signing written authorizations. If a vehicle owner wants to be confrontational, he's going to be confrontational. The signing requirement doesn't change that. Does that answer the federal question here? I think it does, because the onsite requirement, the requirement of having somebody onsite doesn't affect safety. Your argument is even if there are confrontations, that the statute, would it have to be shown that the statute serves to decrease confrontations and somehow make it safer? I think that's what the Supreme Court said. You're saying that the evidence was, there wasn't any evidence of that? I think that's the rule. I think that's what the Supreme Court dictates, and there was no evidence in this case that it does foster safety. And I don't know if there was evidence on this, but you argued that while the restraining order was in effect, police records of confrontations went down? That's correct. And that's in the record, and it's also in the brief, and Judge Brewster references that to a large degree. Is that a question for the federal courts to be deciding, or for the legislature? I guess I have some problem with the whole approach of trying to figure out the overall legislative intent and problem to be resolved in the context of a statewide statute, in the context of a particular action relating to one location. Well, if I... I mean, is the test, the Supreme Court, is the test whether it's effective, or whether it's purpose and intent, and the problem that it's addressed to is safety? Well, of course, the course of language was genuinely responsive to the legitimate safety concern. Now, I think, and Judge Brewster agreed, that the correct interpretation is that it's a factual determination. That's what he decided, and I think he's correct. That is a factual determination, and it would obviously... What is the factual determination? Does it work in San Diego? In this case, that's correct. That was the factual determination in this case. Perhaps it would have been better served, and it may be the thing to do in this case now is to file an action for declaratory judgment in Sacramento to have statewide application. Obviously, this case only has application in San Diego County because there was an expedient, there was an emergency situation, and they were seeking injunctive relief. So... Well, what are we doing then? Well, we're deciding whether or not the court made the correct decision. The statute is preempted in San Diego because it doesn't work in San Diego? That's correct. Yes. But it's not preempted in Los Angeles? As we stand... Is that the effect of our opinion? As we stand here, I believe that's correct. I mean, I think this opinion has application only as to this is an injunction. This is a permanent injunction against the city of San Diego. And I believe that affirming Judge Brewster's decision, I don't believe that it's going to have application in San Francisco. It should. You would be normally concerned about a reported decision of this court, which is going to be read in Phoenix and Seattle and Honolulu and every place else. So... Well, it would certainly be highly persuasive. You have to be mindful of what's happening outside of San Diego. Well, Toker was the same way, Your Honor. Toker, which is very persuasive and has been followed by district courts around the country, certainly in this circuit, was against the city of Santa Ana. And the defendant in that case was the city of Santa Ana. And, of course, this court's ruling in this case would only have had application to the city of Santa Ana. But, obviously, it's very persuasive for the remaining courts. Let's make it out of the injunction context. Let's assume, and maybe I'd be wrong in doing this, but that I were just looking at it in terms of whether, on this record, the appellee is entitled to prevail on the theory that they get declaratory relief that the statute's preempted. Because it's not genuinely responsive to safety concerns. Isn't that kind of the effect of our decision, as opposed to it would only affect San Diego? I agree. I mean, I think that's the practical effect, if you will. I was answering from a legal – I don't know that – hypothetically, if the city of Modesto was to enact a local ordinance that says you must have on-site written authorization, I think that would be foolhardy for them to do that. If the appellee was to prevail in this case, and there was a ruling from this court that said, in San Diego, we've decided that the ordinance in San Diego is unlawful because it's not safety related. Are we talking about an ordinance here? No, we're talking about state statute. I was given a hypothetical. I guess what I'm saying, and I'm maybe not saying it very well, is even though this ruling is particularly related to the city of San Diego, obviously a ruling in favor of the appellee in this case, finding that the San Diego – or I'm finding that the state statute, as applied in San Diego, was unconstitutional. I at least think we have to be looking at the statute as a whole, whether it's generally responsive to safety concerns. If it is, then – I guess if it is, then maybe that's the end of the challenge to it. But if it's not, then the challenge is good because it's preemptive. At least that's how I'm looking at it. I agree. I agree with – if it is not safety related, then it's preemptive. I certainly agree with that statement. Judge Brewster found after trial that it was not safety related, that it has – is not genuinely responsive to safety concerns. That's our position. His opinion says neither party at one point presented additional evidence, you know, concerning the – I guess he meant the safety issues. The check issue. That was on – I mean, the credit card issue. There was another issue in the case with regard to whether towing companies must accept credit cards, and we did not. That's not before us. That's not before us. We've abandoned that claim. Because of the Ninth Circuit decision involving Seattle. Yes. That's correct. And I point out that that was not – the issue there was not safety, it was price. And we conceded – we obviously rolled over with this Court's opinion on that case. Okay. So that was what was – no evidence. So anyway, unless the Court has any questions, any further questions, we suggest that Judge Brewster got it right in this case. Thank you. Thank you. Well, your time has expired. The panel is apparently not entitled to be very charitable today, so we will order the matter submitted on the briefs, We will hear the next case, which is – last case for argument, which is Alonso v. Ashcroft. Thank you.
judges: Schroeder, Gould, Clifton